STATE of Maine

v.

Glenn L. REED.

Supreme Judicial Court of Maine.

Argued June 22, 1984.

Decided Aug. 1, 1984.

William R. Anderson (orally), Asst. Dist. Atty., Belfast, for the State.

Silsby & Silsby, Sandra Hylander Collier (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ., and DUFRESNE, A.R.J.

GLASSMAN, Justice.

Glenn L. Reed appeals from a judgment of conviction entered by the Superior Court, Waldo County, after a jury found him guilty of Class B rape, 17–A M.R.S.A. § 252 (Pamph.1980).[1] Reed challenges the sufficiency of the evidence, certain evidentiary rulings made by the presiding justice, and the court's refusal to instruct the jury in the manner he requested. We affirm the judgment.

On August 24, 1981, a Waldo County grand jury returned an indictment charging that on or about July 9, 1981, Glenn L.

Reed forcibly compelled the complainant to submit to sexual intercourse with him. At trial, the complainant testified to the following. During the late afternoon or early evening of July 9, she was walking alone along route 52 in Lincolnville, when a man, later identified as Glenn Reed, pulled over his truck and asked if she wanted a ride. After some hesitation, she decided to accept the ride, and told Reed her destination. When the truck reached this destination, she attempted to step out, but was prevented from doing so by the defendant, who grabbed her arm and pulled her back into the truck. The defendant asked her to accompany him to his house to determine if the heat had been turned off the previous evening. After entering Reed's house at Reed's insistence, there ensued an extended struggle between Reed and the complainant with Reed alternatively threatening her with sexual intercourse and promising her to take her home if she complied with his requests to allow him to touch her and view her in the nude. The complainant was twice prevented by Reed from leaving the house. Eventually, Reed grabbed the complainant's arm, pulled her into the bedroom, and after a struggle, threw her onto the bed by the ankle and wrist. Thereafter, the defendant pushed her hand and then head down to his penis, and ordered her to perform sexual acts. Finally, the defendant ordered her to "open [her] legs," so he could "rub against her." When she did not comply, the defendant forced her legs apart and penetrated her vagina with his penis.

During cross-examination, defense counsel inquired into the reason or reasons the complainant ultimately submitted to Reed. The complainant testified as follows:

Q Well, was it because of these promises that you say he made to you, or was it because of your feeling that

---

1. Reed was originally convicted in June, 1982. That conviction was overturned for reasons unrelated to the instant appeal. *See State v. Reed,* 459 A.2d 178 (Me.1983). The defendant's sec-

ond trial ended in a mistrial when the jury deadlocked. This appeal is from the defendant's conviction after a third trial.

you had to do what he wanted you to do, that you did the things that you have described?

A It's the same thing. He promised to take me home, and then he threatened to fuck me, that's exactly how he put it in the same sentence, practically.

Q Was it that threat, if you don't do this I'm going to fuck you, that led you to do each of the things that you have been telling us about here today?

A Yes.

Q It was that, wasn't it, it wasn't his touching you; it wasn't his pushing you down and you pushing him away; it was that statement made to you, wasn't it?

A I don't understand.

Q That was the great fear you had from the moment you first saw him, wasn't it?

A I didn't know what the fear was.

Q You didn't know what you were afraid of?

A No.

After the state rested, the defendant moved for a judgment of acquittal. The defendant argued that the complainant's testimony during cross-examination had shown she had submitted to sexual intercourse not because of force, but because of fear generated by the defendant's threats. The presiding justice, rejecting the defendant's contention that the prosecution had failed to make out a *prima facie* showing of forcible rape, denied the motion.

Thereafter, John Cookson testified on behalf of the defendant. Cookson testified that during the late morning of the day in question, he had given a ride in his brown and white Scout to a girl who was walking on route 52 in Lincolnville, and whom he could neither describe nor identify. Previously, the complainant had testified that in the late afternoon, prior to accepting a ride in the defendant's vehicle, she had been given a ride by a man driving a brown and white Scout. The presiding justice, finding Cookson's testimony to be irrelevant, refused to allow him to testify further, and ordered the already elicited testimony struck from the record. In an offer of proof, defense counsel asserted Cookson would testify the girl he picked up was hitchhiking, and that a law enforcement officer had associated him with the man the complainant had said gave her a ride.

Gwendolyn Loring, another defense witness, testified that on July 9, 1981, the defendant was with her at her home until 4:45 p.m., and then again from between 7:00–7:15 p.m. and shortly thereafter. This testimony had some tendency to contradict, at least in a general manner, the complainant's testimony regarding the time frame in which she was with the defendant. Loring testified that a friend, Susan Morse, was also at her home during this time. Defense counsel then requested a continuance so that Susan Morse could testify. Defense counsel informed the presiding justice she had been unable to serve Morse previously because Morse had been out-of-state. Defense counsel requested the court to allow her an opportunity to locate Morse, or, in the alternative, to make arrangements with a court reporter to read into the record Morse's testimony from the second trial. Stating defense counsel had the duty to make any such arrangements prior to trial, and the testimony sought was relatively unimportant, the presiding justice denied the request. In an offer of proof, defense counsel asserted Morse would testify to being at Gwendolyn Loring's on July 9, 1981, and to seeing the defendant at approximately 7:00 p.m. The jury returned a verdict of guilty of Class B rape,[2] and this appeal follows.

### 1. *Sufficiency of the Evidence*

■ The defendant contends the evidence at trial was insufficient to show he

---

**2.** Rape is reduced from a Class A to Class B

crime when the jury finds the victim was a

compelled the complainant by *actual force* to engage in sexual intercourse. The defendant is correct in his assertion that to convict him under the version of 17–A M.R.S.A. § 252 in effect when the alleged rape occurred, the state had to prove compulsion by actual as opposed to constructive force.[3]

When the sufficiency of the evidence is raised, this court must consider whether a trier of fact, resolving all discrepancies in the evidence in favor of the state, rationally could find the essential elements of the offense charged beyond a reasonable doubt. *See State v. Snow,* 464 A.2d 958, 961 (Me.1983); *State v. Spearin,* 463 A.2d 727, 731 (Me.1983). In the specific context of this case, the question becomes whether the jury could reasonably have found that Glenn Reed, through the use of actual force, compelled the complainant to have intercourse with him.

The complainant's testimony, standing alone,[4] supports the jury's finding of actual force.[5] The complainant's testimony is replete with examples of actual force used on her. The defendant attempts to isolate a portion of the complainant's testimony on cross-examination to show she submitted because of the defendant's threats. It is clear, however, that although fear was generated by these threats, the complainant submitted because of actual force used against her. The isolated portion of the

complainant's testimony on which the defendant relies cannot be read apart from the rest of her testimony, which amply demonstrates the force the defendant used was sufficient to compel her submission to sexual intercourse, and did in fact lead to such submission.

### 2. *Exclusion of testimony of John Cookson*

 The defendant contends he was improperly deprived of an opportunity to attack the credibility of the complainant when the presiding justice refused to allow John Cookson to complete his testimony because the proffered testimony was not relevant. We disagree.

Cookson testified he picked up a girl hitchhiking on the *morning* of July 9, 1981. Therefore, his testimony in no way contradicted the assertion of the complainant that she was not hitchhiking when walking on route 52 in Lincolnville during the *late afternoon* of July 9. Moreover, Cookson could not describe the girl to whom he gave a ride. Cookson's testimony had no relevance. Its exclusion was entirely proper.

### 3. *Denial of motion for continuance*

 The defendant contends the presiding justice abused his discretion by denying his motion for a continuance made during

---

voluntary social companion of the defendant at the time of the crime, and on that occasion, permitted the defendant sexual contact. 17–A M.R.S.A. § 252(3) (Pamph.1980); *see State v. Reed,* 459 A.2d 178 (Me.1983).

3. The current version of 17–A M.R.S.A. § 252 defines rape as an act of sexual intercourse in which the victim submits as a result of "compulsion." *See* 17–A M.R.S.A. § 252(1)(B) (1983). "Compulsion" consists of actual force or a threat of death, serious bodily injury, or kidnapping. 17–A M.R.S.A. § 251(1)(E) (1983). The version of section 252 under which the defendant was charged specified two distinct types of rape: rape compelled by force, 17–A M.R.S.A. § 252(1)(B)(1) (Pamph.1980), and rape compelled by threat of death, serious bodily injury, or kidnapping, 17–AM.R.S.A. § 252(1)(B)(2)

(Pamph.1980). The plain wording of the indictment demonstrates the defendant was charged only with rape by force. *See State v. Colson,* 405 A.2d 717, 717–18 (Me.1979) (indictment tracked language of section 252(1)(B)(1), not (1)(B)(2); therefore, only offense charged was rape by actual force). Actual, and not constructive force, had to be shown to obtain a conviction under the former section 252(1)(B)(1). *Colson,* 405 A.2d at 719.

4. A physician who examined the victim on the evening of July 9 testified she had abrasions on her thigh and vagina.

5. Reed admitted to having had sex with the victim, but asserted she was a willing partner.

the trial. If such motion was granted, asserts the defendant, he would have been able to produce evidence (testimony of Susan Morse or previous testimony of Morse read into the record) corroborating Gwendolyn Loring's testimony that the defendant was briefly at her residence at approximately 7:00 p.m. on July 9.

The decision to deny a motion for a continuance is committed to the discretion of the trial justice, and will be disturbed on appeal only for an abuse of that discretion. *See State v. Greenwald,* 454 A.2d 827, 829 (Me.1982); *State v. Holt,* 391 A.2d 822, 825 (Me.1978). A party seeking a continuance for the purpose of securing the attendance of witnesses must show:

> "[W]ho they are, what their testimony will be, that it will be relevant ... and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set...."

*State v. Curtis,* 295 A.2d 252, 255 (Me. 1972) (quoting *Neufield v. United States,* 118 F.2d 375, 380 (D.C.Cir.), *cert. denied,* 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1941)). Although granting the defendant's motion for a continuance might have been proper, the denial did not constitute an abuse of discretion. Morse's testimony would relate only to a collateral issue of credibility, and was cumulative. The accuracy of the complainant's testimony regarding the time frame in which she was with the defendant had already been called into question by the testimony of the defendant, Gwendolyn Loring, and other witnesses. Morse's testimony, therefore, would have had no significant probative value to a material issue in the case. Further, it is not clear defense counsel exercised due diligence in attempting to locate Morse prior to trial, or in the alternative, having available the transcript from the previous trial to be read into evidence. In these circumstances, we find no abuse of discretion in the denial of the motion for a continuance.

### 4. *Refusal to instruct the jury in manner requested*

The defendant contends the presiding justice erred by refusing to give his requested instructions numbers two and three.[6] Requested instruction two reads in full:

> In order to find that the Defendant had sexual intercourse with the complainant by force and against her will you must find that the Defendant intentionally or knowingly used physical force against the complainant, knowing that she did not consent, to compel the act of intercourse.

Requested instruction three reads:

> If you find that [the complainant] submitted to intercourse with the Defendant as the result of statements or threats made by him to her, and not as the result of physical force, then you shall find the Defendant not guilty of the offense with which he is charged.

If the jury is otherwise adequately instructed on a point of law, the trial justice may decline to give a requested instruction. *State v. Mylon,* 462 A.2d 1184, 1187 (Me.1983); *State v. Bessey,* 423 A.2d 244, 245 (Me.1980). Moreover, the presiding justice may properly refuse to give an instruction which is not an accurate statement of the law. *State v. Bennett,* 416 A.2d 720, 723 (Me.1980). We find no error in the court's refusal to give either instruction.

In *State v. Saucier,* 421 A.2d 57 (Me.1980), we examined the overall statutory structure of the sex offense provisions in the criminal code and concluded that

---

6. To preserve for review claimed error arising from a trial justice's refusal to give a requested instruction, counsel should be sure to file the requested instruction with the Superior Court clerk in order that the instruction becomes a part of the clerk's record.

Class C gross sexual misconduct, 17–A
M.R.S.A. § 253(2)(B) (Pamph.1979), silent
as to a mental state requirement, imports
no culpable state of mind. The rationale
underlying our decision in *Saucier* is also
applicable here, and disposes of the defend-
ant's argument that the presiding justice
erred in refusing to give requested instruc-
tion number two. Chapter 11 of the crimi-
nal code provides a coherent classification
of sex offenses, in which certain crimes are
defined to expressly include a culpable
state of mind,[7] and others are not. The
more forceful or egregious sexual conduct,
including rape compelled by force, is de-
fined without reference to the actor's state
of mind. The legislature, by carefully de-
fining the sex offenses in the criminal code,
and by making no reference to a culpable
state of mind for rape, clearly indicated
that rape compelled by force or threat re-
quires no culpable state of mind. As we
reasoned in *Saucier*, one person cannot
accidentally or innocently compel another
to submit to sexual intercourse. *See State
v. Saucier*, 421 A.2d at 59.

■ The refusal to give requested in-
struction number three similarly presents
no error. The instruction given by the
court adequately conveyed to the jury it
must find that the physical force used by
the defendant was sufficient to cause and
did in fact cause the complainant to submit
to sexual intercourse against her will. The
court's instruction was proper, and the de-
fendant has no cause to complain.

The entry is:

Judgment affirmed.

**7.** For example, 17–A M.R.S.A. § 255 provides in
pertinent part: "1. A person is guilty of unlaw-
ful sexual contact if he intentionally subjects
another person, not his spouse, to any sexual
contact ...."