**STATE of Maine**

**v.**

**Robert LAVOIE.**

Supreme Judicial Court of Maine.

Argued June 6, 1989.
Decided July 14, 1989.

Paul Aranson, Dist. Atty., Laurence Gardner, (orally), Deputy Dist. Atty., Portland, for plaintiff.

James R. Bushell, (orally), Portland, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Following a jury trial in Superior Court (Cumberland County, *Perkins, J.*), Robert Lavoie, defendant, appeals from his robbery conviction. He argues on appeal that the trial justice erred in refusing to grant a mistrial following allegedly inadmissible testimony regarding the composition of a photo lineup and in refusing to give a cautionary instruction regarding the victim's eye witness identification. Defendant also asserts that the evidence was insufficient to support the verdict.

The testimony at trial may be summarized as follows: A clerk at a convenience store on Forest Avenue in Portland, testified that at approximately 11:45 p.m. on April 7, 1987, while she was working behind the counter, two men, one blond and one dark-haired, entered the store. The dark-haired man stood in front of the counter, pointed a gun at her, and told her to give him all the money. The blond man approached her behind the counter, pushed her out of the way, grabbed the tray out of the cash register and threw it in the trash. Just as the blond man asked where the safe was, a customer pulled into the parking lot in front of the store. The dark-haired man with the gun spotted him and ran out the door. The blond followed, leaving the cash-register tray in the trash. The clerk also testified that the dark-haired man had fairly dark skin, a mustache, a medium build and was approximately 5' 7" or 5' 8".

Officer Bruce Chase of the Portland Police Department investigated the alleged robbery. On the morning of April 9, he showed the clerk a collection of six photos and asked her to point out the individual who was involved in the robbery, if she found him among the photographs. According to Officer Chase, she did not hesitate in picking out a photograph of defendant and identifying him as the man who was holding the gun. The clerk testified that she got a good look at the man who was holding the gun during the incident and identified defendant as that person. When asked on redirect examination why she was so certain that defendant was the man holding the gun, she testified, "I remember him because he was holding the gun directly at me, and I looked right in his face, and all I could think at the time is, is he going to use that."

■ At trial, when asked to describe the procedure for a photograph line-up, the investigating officer stated that a "[p]hoto line-up consists of six photographs of individuals that we have on file in our records division of the Portland Police Department ...." Defense counsel objected and requested that the trial justice grant a mistrial. Defendant argues on appeal that the trial justice erred in denying his motion for a mistrial because the police officer's testimony implied that the individuals depicted in the photographs had previously been convicted or arrested. Defendant further argues that evidence of prior crimes or bad acts is admissible only in limited circumstances none of which are applicable in the present case, and that defendant was thus prejudiced by the implication inherent in the officer's statement. It is important to note that the officer testified that the police department has access to photos of persons who have not been convicted of any crime. Further, although the Court suggested a curative instruction, none was requested. On balance, we conclude that the trial justice did not abuse his discretion in denying defendant's motion for a mistrial. *See State v. Mason,* 528 A.2d 1259, 1260 (Me.1987); *State v. Hilton,* 431 A.2d 1296, 1302 (Me.1981).

Defendant requested that the trial justice give the following instruction to the jury regarding identification testimony:

Where the prosecution has offered identification testimony, i.e., the testimony of an eye witness that she saw the Defendant commit the act charged, such testimony should be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. Mistaken identification is not uncommon. The witness' opportunity to observe the perpetrator during the commission of the act charged is of great importance in determining the credibility of her identification. The testimony of the witness that she is positive of her identification may be considered by you, but does not relieve you of the duty to carefully consider her identification testimony and to reject it if you find that it is not reliable. (Careful scrutiny of such testimony is especially important when, as in this case, it is the only testimony offered by the prosecution to connect Defendant with the act charged).

The trial justice declined to give the instruction. In reviewing a criminal defendant's request for a particular instruction, we have previously explained that "the presiding justice may properly refuse to give an instruction which is not an accurate statement of the law." *E.g. State v. Reed,* 479 A.2d 1291, 1295 (Me.1984). As a matter of law, it is incorrect to single out the testimony of an eyewitness for special scrutiny. We have previously expressed our disapproval of instructions that focus specifically upon a single witness, *State v. McDonough,* 507 A.2d 573, 575–76 (Me. 1986). *See also State v. Goodrich,* 432 A.2d 413, 417 (Me.1981). The trial justice therefore did not err in refusing to give defendant's requested instruction. Moreover, defendant makes no attempt to demonstrate any error or deficiency in the general instructions regarding the credibility of witnesses.

Finally, because a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged, we conclude that the evidence was sufficient to support the verdict.

The entry is:

Judgment affirmed.

All concurring.