## MUTUAL FIRE INSURANCE COMPANY,

v.

## Thomas N. HANCOCK et al.

Supreme Judicial Court of Maine.

Argued Sept. 21, 1993.

Decided Dec. 22, 1993.

John H. O'Neil, Jr. (orally), Smith, Elliott, Smith & Garmey, Saco, for plaintiff.

Theodore K. Hoch (orally), Bath, Robert V. Hoy, Platz & Thompson, P.A., Lewiston, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Mutual Fire Insurance Company ("Mutual") appeals from the judgment entered after a jury-waived trial in the Superior Court (Lincoln County, *Bradford, J.*) holding that Mutual had a duty under Thomas Hancock's homeowner's insurance policy to defend and indemnify Hancock, who, while in a state of alcoholic blackout, beat and raped Jane Doe.[1] We vacate the decision of the trial court.

■ On November 14, 1990, Hancock raped and brutally beat Jane Doe over the course of several hours. Prior to that night, Hancock and Doe had been living together and had no history of violence. The relationship was deteriorating, however, because Doe objected to Hancock's basement marijuana cultivation. She had threatened to leave him if he did not give up his garden. That night, Hancock was drinking and wanted to talk about their relationship; Doe was packing for a vacation with her family and did not want to talk. Her refusal to discuss their situation infuriated Hancock.

In the early evening, Hancock hit Doe for the first time. Over the next several hours, he struck her repeatedly with a closed fist, breaking bones and inflicting permanent injuries, and raped her. At intervals during the beating, Hancock would demand that Doe mix him another drink; Doe complied. At

1. A fictitious name.

no time did Hancock stagger or lose the ability to speak coherently. He later pleaded guilty to charges of aggravated assault and gross sexual assault.

Mutual insured Hancock's home under a so-called "homeowner's policy." The policy contained standard language, offering liability coverage for "occurrences"—i.e., "accidents," and denying coverage for "bodily injury or property damage . . . which is expected or intended by the insured." When Doe brought a civil action against Hancock for injuries she sustained as a result of Hancock's actions, Mutual defended Hancock, but requested a declaratory judgment that Hancock's actions were not covered by the policy. The trial court heard the underlying civil action and the declaratory judgment action together. Mutual contended *inter alia* that Hancock intended the injuries to Doe or at least the injuries were to be expected and therefore the policy did not provide coverage. The trial court rejected Mutual's assertion that Hancock's undisputed actions established the requisite intent or expectation and ruled that because Hancock had been too intoxicated to "intend" the injuries, Mutual owed Hancock a duty to defend and indemnify. The trial court stated that Hancock's "acts were not committed intentionally or knowingly. They were committed without any conscious awareness. His mental state was at best reckless."

On appeal, Mutual challenges as clearly erroneous the trial court's ruling that Mutual failed to "carr[y] its burden of proving that Hancock's acts were intended or expected." We agree with Mutual that the evidence before the trial court compelled the conclusion that Hancock intended or expected the harm to Doe. *See Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981). The Superior Court expressly found that Hancock "repeatedly hit [Doe] with a closed fist in the mouth, nose, eyes and forehead, . . . forced her to remove her clothes and have sexual intercourse with him, and choked her to stop her screams for help." Nevertheless, because the court also found that Hancock committed these acts "during a period of extreme intoxication," the court ruled that Mutual failed to carry its burden to prove the acts were intentional or expected.

■ Absent a rare admission by the party, a party's intent can only be inferred from his physical acts. *See State v. McEachern*, 431 A.2d 39, 42 (Me.1981) ("rarely, if ever, [is there] direct evidence of a defendant's mental state"). The fact that Hancock was intoxicated and claims to be unable to recall his violent acts does not negate the overwhelming evidence of physical violence. "[O]ne person cannot accidentally or innocently compel another to submit to sexual intercourse." *State v. Reed*, 479 A.2d 1291, 1296 (Me.1984). Similarly, a person cannot accidentally hit another person repeatedly with a closed fist. *See State Mutual Ins. Co. v. Bragg*, 589 A.2d 35, 38 (Me.1991) (murder can only be intentional and therefore excluded from insurance coverage); *Perreault v. Maine Bonding & Casualty Co.*, 568 A.2d 1100, 1101 (Me.1990) (child sexual abuse can only be intentional). By proving these physical acts, Mutual carried its burden to prove that Hancock intended or expected the harm to Doe. Therefore, the policy exclusion applies to excuse Mutual from its duty to indemnify Hancock for the damages awarded to Doe. As a matter of law, a systematic, hours-long brutal beating is not a "reckless" act; it can only be intentional and the injuries resulting therefrom expected. On this evidence, the conclusion that Hancock intended the harm to Doe, or at least expected it, despite his intoxication, is compelling.

The entry is:

Judgment vacated.

ROBERTS, CLIFFORD, COLLINS and DANA, JJ., concurring.

GLASSMAN, Justice dissenting.

I respectfully dissent. In finding that the tortious acts of Hancock "can only be intentional and the injuries resulting therefrom expected," the Court not only fails to grant proper deference to the Superior Court in its factfinding rule, but also determines that as a matter of law the issue is precluded from litigation in the present civil action. After considering the evidence, the trial court found that:

[T]he events which followed Hancock's trip to the basement were acts committed while he was in a blackout from having consumed eight to ten drinks of equal parts of rum and coke as well as the added effects of smoking marijuana. His acts were *not* committed intentionally or knowingly. They were not committed with any conscious awareness. His mental state at best was reckless.

We will not overturn a trial court's finding of fact unless the finding is clearly erroneous, i.e., not supported by competent evidence in the record. *Morin Building Products v. Atlantic Design and Construction*, 615 A.2d 239, 241 (Me.1992). In this case, while a reasonable factfinder might have reached a different conclusion than that of the trial court, there is ample evidence in the record to support the trial court's finding on this issue. Accordingly, it cannot be said as a matter of law that the trial court erred in so determining. *Fournier v. Rochambeau Club*, 611 A.2d 578, 579 (Me.1992).

In arguing to the contrary, Mutual relies on the fact that Hancock pleaded guilty to the offenses of gross sexual assault, 17–A M.R.S.A. § 253 (Supp.1992), and aggravated assault, 17–A M.R.S.A. § 208 (1983). In *Beale v. Chisholm*, 626 A.2d 345 (Me.1993), we held that a criminal conviction for manslaughter did not preclude a defendant from litigating the issues not essential to that conviction in a subsequent civil proceeding. *Id.* at 347. We so held on the well-established principle that it is only issues *essential* to the conviction that are precluded from litigation in an ensuing civil action. *Id.; see also Restatement (Second) of Judgments* § 27 comment h (1982) (if judgment not dependent on issues determined, relitigation not precluded and such determinations have characteristics of dicta); 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4421 (1981) (critical distinction between findings essential to a judgment and those that are *not*, for purposes of issue preclusion).

Here, intent was not essential to Hancock's conviction for either offense and, accordingly, neither conviction was predicated on a deter-

mination of that issue. The statute governing the gross sexual assault charge recites that "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person submits as a result of compulsion." 17–A M.R.S.A. § 253(1)(A). "Compulsion" is explicitly defined as:

the use of physical force, a threat to use physical force or a combination thereof that makes a person unable to physically repel the actor or produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being.

"Compulsion" as defined in this paragraph places no duty upon the victim to resist the actor.

17–A M.R.S.A. § 251(1)(E) (Supp.1992). Notably missing from this statutory language is any requirement that the State prove that a defendant had formed any intent or even acted with any degree of recklessness. This is in sharp contrast to the statutory definitions of such other Class A crimes as murder, 17–A M.R.S.A. § 201 (1983 and Supp. 1992) (requiring that the defendant act "intentionally or knowingly" or "with a depraved indifference to the value of human life"), kidnapping, 17–A M.R.S.A. § 301 (1983) (requiring that the defendant restrain another "knowingly"), and robbery in cases where force is used or bodily injury is inflicted, 17–A M.R.S.A. § 651(1) and (2) (1983) (requiring intent to overcome resistance or inflict injury).

The Legislature opted not to require intent in cases of gross sexual assault in order to focus the proof in such cases on whether the victim has been subjected to certain specified conduct by the defendant providing a specified *state of mind* in the victim without regard to the state of mind of the defendant. We have consistently held that no proof of mental culpability or specific intent is required to sustain a conviction pursuant to Section 253. *See, e.g., State v. Taplin*, 489 A.2d 1107, 1108 (Me.1985); *State v. Pierce*, 438 A.2d 247, 251 (Me.1981).[1] Mutual cannot

---

1. The Court relies on *State v. Reed*, 479 A.2d 1291, 1296 (Me.1984) for the proposition that

rely on Hancock's conviction for gross sexual assault, or on Hancock's conclusory and nonsworn statements made when entering his guilty plea, to establish as a matter of law that Hancock acted intentionally during his violent, alcohol and marijuana-induced blackout.

Nor does Hancock's conviction for aggravated assault establish that Hancock acted intentionally. The statute pursuant to which Hancock was prosecuted provides:

1. A person is guilty of aggravated assault if he intentionally, knowingly, *or recklessly* causes:

A. Serious bodily injury to another; or

. . .

C. Bodily injury to another under circumstances manifesting an extreme indifference to the value of human life.

17–A M.R.S.A. § 208 (1983) (emphasis added). In her complaint against Hancock, the victim alleged that Hancock "intentionally, knowingly, recklessly or negligently assaulted [the victim] under circumstances manifesting extreme indifference to the value of human life and causing serious bodily injury to her." Thus, neither Hancock in his plea of guilty to the aggravated assault charge, nor the victim in her complaint against Hancock, admit or establish that Hancock's conduct was intentional.[2]

When an insurer seeks a declaratory judgment that it has no duty to defend or indemnify an insured, we have permitted the use of nonmutual offensive collateral estoppel based on a criminal conviction when "the identical issue necessarily was determined by [the prior criminal] judgment" and "the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding." *State Mut. Ins. Co. v. Bragg,* 589 A.2d 35, 37

(Me.1991). At issue in *Bragg* was an insured's guilty plea to a charge of murder, where the insured "had ample incentive vigorously to litigate the issue of his intent in his criminal prosecution." *Id.* We therefore held that the insured's convictions for murder and attempted murder were "sufficient to preclude relitigation of the issue of [the insured's] subjective intent." *Id.* at 38; *see also Perreault v. Maine Bonding & Casualty Co.,* 568 A.2d 1100, 1101 (applying similar reasoning to a case involving a criminal conviction for unlawful sexual contact, 17–A M.R.S.A. § 255, which requires intent, and civil litigation with claims of battery and intentional infliction of emotional distress, both intentional torts). Because proof of intent is absent from the crimes for which Hancock was convicted, *Bragg* and *Beale* require us to sustain the trial court's finding that Hancock did not act intentionally.

"[o]ne person cannot accidentally or innocently compel another to submit to sexual intercourse." We made that observation in the context of noting that a culpable state of mind was not required for the offense of rape in violation of 17–A M.R.S.A. § 252, since repealed. *Reed,* 479 A.2d 1296. We therefore found no error in the trial court's refusal to include a culpable state of mind requirement in its instructions to the jury. *Id.* at 1295. Our holding in *Reed* does not establish that a person convicted of rape or gross sexual assault acted with intent. To the contrary, it is in line with our other cases stating that intent

simply is not at issue in such a criminal proceeding.

2. As the Court notes, the homeowner's policy Mutual issued to Hancock excluded coverage for bodily injury or property damage that is "expected or intended by the insured." It is clear that Mutual's liability on any claim could have been limited by contract language explicitly excluding certain conduct, regardless of intent, pursuant to the policy of insurance.