Benjamin A. **BUCCI,** individually and as assignee of N.E.C.N., Inc. d/b/a The Industry, Plaintiff

v.

**ESSEX INSURANCE COMPANY,** Defendant

No. CIV. 03–81–P–C.

United States District Court, D. Maine.

April 8, 2004.

---

Thomas S. Marjerison, Norman, Hanson & Detroy, James D. Poliquin, Norman, Hanson & Detroy, Portland, ME, for Benjamin A Bucci, dba Industry, Plaintiff.

Laurence H. Leavitt, Friedman, Gaythwaite, Wolf & Leavitt, Michelle Allott, Friedman, Gaythwaite, Wolf & Leavitt, Portland, ME, for Essex Insurance Company, Defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON COUNTS I, III, IV, AND V; GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; AFFIRMING THE COURT'S PRIOR RULING ON COUNT II; AND AWARDING DAMAGES ON COUNT II

GENE CARTER, Senior District Judge.

Plaintiff Benjamin A. Bucci filed this action, both individually and as assignee of N.E.C.N. d/b/a The Industry ("The Industry"), against The Industry's insurer, Defendant Essex Insurance Company ("Essex"), alleging that Essex had breached its duties to defend and indemnify The Industry.[1] Mr. Bucci seeks to recover the amount of a stipulated judgment entered against The Industry after Essex had declined to defend and indemnify The Industry against a lawsuit filed by Mr. Bucci in connection with injuries suffered by Mr. Bucci in December of 2000. This Court previously concluded that Essex breached its duty to defend The Industry by refusing to provide a defense against Mr. Bucci's lawsuit. *See Bucci v. Essex Ins. Co.*, 287 F.Supp.2d 75, 79 (D.Me.2003). On December 5, 2003, the Court conducted a bench trial to resolve the remaining issues in the case, including what the damages are for Essex's breach of its duty to defend The Industry against Mr. Bucci's underlying tort action and whether Essex has a duty to indemnify The Industry for the amount of the stipulated judgment in the tort action by Mr. Bucci. At the close of trial, Essex moved for judgment as a matter of law on the remaining counts (Counts I, III, IV, and V), and the Court reserved decision on that motion. Also before the Court at this time is Essex's Motion for Reconsideration with respect to the Court's prior ruling on Count II that Essex had breached its duty to defend The Industry against Mr. Bucci's tort claims. For the reasons set forth below, the Court will grant Essex's Motion for Judgment as a Matter of Law and enter judgment in Essex's favor on Counts I, III, IV, and V, grant Essex's Motion for Reconsideration, and affirm the Court's prior ruling with respect to Count II. Further, the Court will award Mr. Bucci $7,000 in contract damages for Essex's breach of its duty to defend, as well as his reasonable attorney fees attributable to Count II of the Complaint.

## I. Facts

On December 23, 2000, Mr. Bucci was waiting in line outside of The Industry, a nightclub in Portland, Maine, when an unknown assailant hit him on the back of the head. Transcript of Proceedings ("Tr.")(Docket Item No. 49) at 69–70. Mr. Bucci recalls this first blow to the back of his head, but then lost consciousness and,

---

1. Mr. Bucci's Complaint (Docket Item No. 4, Ex. 2) against Essex includes the following counts: Count I (reach and apply, 24–A M.R.S.A. § 2904), Count II (breach of contract—duty to defend), Count III (breach of contract—duty to indemnify), Count IV (unfair claims settlement practices, 24–A M.R.S.A. § 2436–A), and Count V (breach of contract—medical payments).

with the exception of a split second in the ambulance, has no memory of the events that followed the first blow until he arrived at the hospital. *Id.* at 61, 70. He cannot describe the person who hit him.[2] *Id.* at 70. Mr. Bucci suffered significant facial injuries and required reconstructive surgery, but he did not seek treatment for any emotional injuries. *Id.* at 65, 73. Mr. Bucci's medical records from December 23, 2000, indicate that he was "hit," "kicked," and "punched" in the face.[3] Def. Ex. 3. In discussions with health care providers, Mr. Bucci did not attribute any of his physical injuries to anything other than the attack itself. Tr. at 75. Specifically, Mr. Bucci did not ascribe, nor does the evidence attribute, any of his injuries to any actions of The Industry staff following the attack or any failure of The Industry staff to act following the attack. *Id.* Further, although Mr. Bucci testified that he has experienced pain and emotional suffering since the attack, he did not indicate that his pain and suffering stem from anything other than the attack itself. *Id.* at 65–68.

Brian Hanson, owner of The Industry, received a notice of claim regarding the December 2000 incident in the mail, and he referred the notice of claim to Essex. *Id.* at 15. Essex had issued a commercial general liability insurance policy to The Industry, and this policy was in effect at the time Mr. Bucci was injured. Pl.Ex. 10. In a letter dated June 29, 2001, Essex disclaimed any liability to defend or indemnify The Industry with respect to Mr. Bucci's suit. Tr. at 15–16 and Pl.Ex. 13. In July 2001, Mr. Bucci filed a complaint in Cumberland County Superior Court against The Industry, alleging a number of claims against The Industry in connection with the December 2000 incident and The Industry's conduct before, during, and after the attack. Def. Ex. 6. After he was served with the complaint, Mr. Hanson then sent the complaint to Essex. Tr. at 18. By letter dated August 29, 2001, Essex again disclaimed coverage and refused to provide a defense. Tr. at 19 and Pl.Ex. 6.

Mr. Hanson's claim for coverage was handled by Kimberly Payne, an Essex sen-

---

**2.** Mr. Bucci has never alleged, nor is there any evidence on the record, that the assailant was a member of The Industry staff.

**3.** At trial, Mr. Bucci stipulated that Defendant's Exhibit 3 represented Mr. Bucci's medical records as provided to Essex by Mr. Bucci. Tr. at 78. When Essex sought to admit the medical records, Mr. Bucci objected on foundation and hearsay grounds, while Essex argued that statements made by Mr. Bucci to health care providers are not hearsay. *Id.* While Mr. Bucci has agreed (both at trial and in his post-trial briefing) that references to Mr. Bucci's injuries in the medical records are admissible to the extent pertinent to the diagnosis and treatment of Mr. Bucci, he objects to the admission of the portions of the medical records that characterize the December 23, 2000 incident as an "assault" because this characterization, he argues, is not pertinent to Mr. Bucci's diagnosis and treatment. The Court agrees with Mr. Bucci on this point, but concludes that the descriptions of

the specific contact that caused Mr. Bucci's facial injuries that are contained in Mr. Bucci's medical records from December 23, 2000, were provided to his health care providers in the emergency room by Mr. Bucci or others on his behalf to assist the providers in their diagnosis and treatment of Mr. Bucci. Accordingly, the statements in his medical records from the emergency room that he was hit, kicked, and punched in the face are admissible under the exception to the hearsay rule which provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule even though the declarant is available as a witness, and the medical records themselves are admissible as business records. Fed. R.Evid. 803(4) and (6).

ior claims examiner who makes decisions regarding liability coverage, settlement, and investigation of claims. Tr. at 33. Ms. Payne denied Mr. Hanson's claim for coverage (including a defense) on the basis of an assault and/or battery exclusion in the policy. *Id.* at 34. That exclusion provides:

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising from:

4. Allegations of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person [or]

5. Charges or allegations of negligent hiring, training, employment, placement, investigation, supervision, reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by this endorsement[.]

Pl.Ex. 10, Endorsement M/E–029 (12/99). The policy does not define the terms "assault" and "battery." Tr. at 35. Ms. Payne testified that, as a general matter, Essex applies the civil definition of these terms in the state in which the case arises.

*Id.* at 36. Ms. Payne further testified that she also uses her personal understanding of these terms.[4] *Id.* at 37.

Mr. Hanson believed that it would cost him $30,000 in attorney fees to get to trial, and he could not afford the fees. *Id.* at 20–21. Although Mr. Hanson retained the services of a local attorney, he felt that he had to settle the case or go out of business. *Id.* at 21–22. Mr. Bucci and The Industry subsequently filed a joint motion for entry of judgment in the amount of $200,000 (inclusive of all costs and interest), which was granted by the Superior Court. Pl. Exs. 2 and 3. In consideration of Mr. Bucci's agreement not to execute $193,000 of the stipulated judgment directly against The Industry, The Industry assigned all of its rights, claims, and/or causes of action against Essex to Mr. Bucci, including any claims against Essex for failure to defend The Industry or for breach of the insurance contract. Pl.Ex. 4, ¶ 2. The assignment included any claims for attorney fees and costs as well. *Id.* The Industry paid Mr. Bucci the remaining $7,000 of the stipulated judgment, but the parties agreed that The Industry would be entitled to the first $7,000 of any recovery from Essex in the present action *Id.* ¶¶ 5–6.

At the time of the settlement, Mr. Bucci's medical expenses totaled approximately $8,000. Tr. at 85. Mr. Hanson testified that he did not have any information at the time of settlement that would document damages in the amount of $200,000. *Id.* at

---

4. Ms. Payne testified as follows:

Q: With respect to the definition of the term assault and battery under this policy and case, you apply the definition of that for civil assault and battery in the State of Maine; correct?
A: I used the understanding of what I had for assault which is intentional touching for assault, and the same with battery, which is from my basic training in law school.

Q: Is that your personal belief or something that Essex represents as the definition of assault and battery?
A: We don't have a formal definition of assault and battery. I know that if someone goes out and deliberately attacks you and beats you, and from what I heard from Mr. Bucci, he was intentionally attacked by someone.
Tr. at 36–37.

28. Mr. Hanson also testified that he would not have settled the case if Essex had provided a defense, nor would he have settled for $200,000 if the Industry had been responsible for paying the full amount of the settlement, rather than just $7,000. *Id.* at 22–23, 27. Based on conversations with his staff, Mr. Hanson did not feel that The Industry had any liability for Mr. Bucci's injuries. *Id.* at 29.

Ms. Payne was not told in advance of the consummation of the settlement of The Industry action that Mr. Hanson was pursuing a settlement or entering into a judgment, and she did not receive notice of the stipulated judgment until Mr. Bucci filed the instant suit. *Id.* at 51–52. Essex never had any opportunity to participate or be heard in the settlement negotiations. *Id.*

## II. Discussion

### A. Motion for Reconsideration on Duty to Defend

As an initial matter, the Court will address Essex's motion for reconsideration of this Court's earlier ruling that Essex had a duty to defend The Industry against Mr. Bucci's lawsuit and that Essex had breached this duty by failing to provide a defense. *See Bucci,* 287 F.Supp.2d at 79. Essex argues that a recent Maine Law Court case, *Mallar v. Penn–America Insurance Company,* 837 A.2d 133 (Me. 2003), requires this Court to reverse its prior decision.

In *Mallar,* the plaintiff had obtained a $300,000 judgment against a pub after witnessing the murder of the pub's bartender and subsequently brought a declaratory judgment action against the pub's insurer seeking a determination that the pub's insurance policy covered his award. The trial court concluded that the insurer had no duty to indemnify the pub with respect to the award because the insurance policy

contained an assault and battery exclusion that prohibited coverage for

> "Bodily Injury," "Property Damage," Personal Injury … or any other damages resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises;
>
> 1.Whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees, patrons or other persons in, on, near or away from insured's premises ....

*Mallar,* 837 A.2d at 134. To circumvent this exclusion, the plaintiff argued that "the tort of negligent infliction of emotional distress is an independent tort and that the proximate cause of his severe emotional distress was not the witnessing of a murder, but the behavior of the bartender when she breached her duty of care by 'negligently accosting [and] taunting' the customer who later killed her." *Id.* at 135. The Law Court declined to address whether the bartender's actions proximately caused the plaintiff's injuries because it concluded that "witnessing the murder was unquestionably the cause-in-fact." *Id.* The court further concluded that:

> The policy's "assault and battery exclusion" expressly states that Penn–America will not indemnify for "any … damages resulting from assault and battery or physical altercations that occur in … the insured's premises … at the instigation of, or with the direct or indirect involvement of … the insured's employees." The exclusion is not ambiguous and Mallar has failed to "show that his injury [fell] within the scope of the contract." *Pelkey v. Gen. Elec. Capital Assur. Co.,* 2002 ME 142, ¶ 10, 804 A.2d 385, 387 (2002).

*Id.*

█ The Court does not find *Mallar* to be useful on the duty-to-defend issue pre-

sented in this case. Essex argues that, under *Mallar*, if the intentional conduct is the cause-in-fact of the injury, there is no duty to defend where such intentional conduct is excluded by the policy. This argument, as applied to the facts of this case, ignores the specific language of the Essex exclusion, as well as the allegations in the underlying complaint regarding The Industry's negligent conduct after the attack had ceased. The Court's earlier decision was hinged on the specific language of the exclusion in the Essex policy:

> With respect to this exclusion, the Court will not construe claims "arising out of assault and/or battery" to include claims for bodily injury resulting from conduct that occurs after the commission of the alleged assault. The language of the exclusion itself weighs against such a reading because the exclusion specifically addresses claims arising out of acts or omissions taken in connection with the prevention or suppression of an assault and/or battery. If claims arising out of the prevention and suppression of an assault are not encompassed by the phrase "arising out of assault and/or battery" and thus require specific mention in the exclusion, then there is no apparent reason for the Court to construe that phrase to encompass claims for conduct after an assault has ceased. Further, to the extent that the meaning of "suppression" is ambiguous, the Court construes it narrowly to include acts or omissions in connection with the termination of an assault once it has commenced and will not interpret it to in-

clude acts or omissions that occur after the assault has ceased.

*Bucci,* 287 F.Supp.2d at 79. Maine's pleading comparison test required the Court to examine the underlying complaint to see "[i]f the general allegations in the complaint could give rise to *any* set of facts that would establish coverage." *Northern Sec. Ins. Co. v. Dolley,* 669 A.2d 1320, 1322 (Me.1996) (emphasis added). "Any ambiguity must be resolved in favor of a duty to defend." *Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.,* 584 A.2d 608, 609 (Me.1990). Under this standard, the Court found a duty to defend based on Mr. Bucci's allegations with respect to the Industry staff's post-attack conduct: [5]

> The underlying complaint includes claims of negligence and negligent infliction of emotional distress. Because it is possible that the facts developed at a trial could have established coverage under the policy with respect to The Industry's conduct after the alleged assault had ceased, the Court concludes that Essex had a duty to defend The Industry against Bucci's underlying action.

*Bucci,* 287 F.Supp.2d at 79. In *Mallar,* the Law Court was reviewing a broader assault and battery exclusion to determine if the insurer had a duty to *indemnify* for damages sustained by the witness of a murder. The Court is not persuaded that *Mallar* requires any result different than that previously reached in this case. Here, the duty-to-defend inquiry required the Court to examine and compare the allegations of the complaint and the policy language to determine if there was *any*

---

5. Although there was no evidence offered at trial to demonstrate that Mr. Bucci suffered any bodily injury or damages stemming from any act or omission other than the attack itself, the mere presence of the allegations in the complaint was sufficient to trigger a duty to defend. As this Court noted in its earlier

decision, "[u]nder Maine law, '[t]he duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether there is a duty to indemnify.'" *Bucci,* 287 F.Supp.2d at 78 (quoting *Commercial Union Ins. Co. v. Royal Ins. Co.,* 658 A.2d 1081, 1083 (Me.1995)).

possibility of coverage. After the foregoing reconsideration, the Court affirms its prior decision on Mr. Bucci's Motion for Partial Summary Judgment with respect to Count II.

## B. Duty to Indemnify

■ The Law Court has ruled that when an insurance company breaches its duty to defend, it is not automatically estopped from asserting noncoverage as a defense to a claim for indemnification In *Elliott v. Hanover Insurance Company*, 711 A.2d 1310 (Me.1998), the insurer had failed to provide a defense for an insured against a negligence action brought by a plaintiff who had been injured on the insured's property. After the insurer denied coverage and refused to defend, the insured and the plaintiff agreed that the insured would not defend the negligence action and would assign his rights under the policy to the plaintiff in exchange for the plaintiff's agreement not to execute a judgment directly against the insured. *Id.* at 1311. Thereafter, the court awarded a default judgment to the plaintiff, who then sued the insurer to recover the amount of the judgment. *Id.* at 1311–12. The insurer sought to assert noncoverage as a defense against the plaintiff's suit for indemnification under the policy. *Id.* at 1312.

■ Although the Law Court acknowledged that some courts have precluded an insurer from denying coverage following a breach of the duty to defend, the Law Court agreed with the reasoning of *Polaroid Corporation v. Travelers Indemnity Company*, 414 Mass. 747, 610 N.E.2d 912 (1993), and concluded that "an unjustified refusal to defend should be treated as a breach of the insurance contract and that normal contract damage principles apply." *Elliott*, 711 A.2d at 1313 (citing *Polaroid*, 610 N.E.2d at 921). If an insurer breaches its duty to defend, it "is not estopped from asserting noncover-

age as a defense in a subsequent action brought by the insured or the insured's assignee." *Id.* The rationale for this rule is two-fold. First, if insurers are penalized by the imposition of a duty to indemnify where one otherwise would not exist, the result is an improper enlargement of the bargained-for coverage provided for in the policy. *Id.* Second, "if an insurer who refuses to defend were estopped from asserting the lack of coverage as a defense in a subsequent action, then the insurer's duty to indemnify would be coextensive with its duty to defend." *Id.* This result would be incompatible with the Law Court's repeated statements that "an insurer's duty to indemnify is independent from its duty to defend and that its duty to defend is broader than its duty to indemnify." *Id.* The *Elliott* court explained, however, that the insurer bears the burden of proving that the underlying claim(s) did not fall within the policy's coverage. *Id.* at 1313–14. Further, the insurer "is also bound by the default judgment as to any factual issues that might have been litigated in the underlying negligence action." *Id.* at 1314.

■ The allegations in Mr. Bucci's complaint against The Industry, which set forth claims for negligence, negligent security, negligent supervision and training, negligent infliction of emotional distress, concert of action, spoliation of evidence, and punitive damages, included allegations of injuries caused by The Industry's negligence after the attack on Mr. Bucci. However, the evidence on the record before the Court does not reflect that Mr. Bucci suffered any such injuries. Instead, the inescapable conclusion to be drawn from the evidence is that Mr. Bucci was hit from behind, knocked to the ground, and repeatedly hit or kicked until his face was so injured that it required reconstructive sur-

gery.[6] There is no evidence that would have supported the claims that previously led this Court to conclude that Essex had a duty to defend The Industry against Mr. Bucci's suit, *i.e.*, claims of injuries resulting from The Industry's negligence after the attack. Instead, the Court is persuaded that Mr. Bucci's injuries from the attack itself would have been the only basis for recovery in his suit against The Industry if that suit had gone to trial in the normal course of events.

The Essex policy includes a coverage exclusion for injuries arising from an assault and/or battery (including any injuries arising from the insured's failure to prevent or suppress the attack). As a result, Essex is not required to provide coverage under the policy for any bodily injuries suffered as a result of the attack (or any failure by The Industry to prevent or suppress the attack). Because the Court concludes that the entire stipulated judgment in Mr. Bucci's tort action against The Industry could be based *only* on injuries for which coverage is excluded under the policy, Essex has no duty to indemnify The Industry for the stipulated judgment in the underlying tort action. Because Essex has met its burden of establishing that any recovery by Mr. Bucci in a trial of the underlying tort action would have been outside the coverage of the Essex policy, the Court will enter judgment in favor of Essex on Counts I, III, and V of the Complaint.

## C.  Unfair Claims Settlement Practices

Count IV of Mr. Bucci's Complaint against Essex alleges that Essex's denial of a defense to The Industry violated Maine's unfair claims settlement practices statute, 24–A M.R.S.A. § 2436–A. In particular, Mr. Bucci alleges that Essex's denial of a defense constitutes a knowing misrepresentation to an insured and a failure to effectuate a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear in violation of 24–A M.R.S.A. § 2436–A(1)(a) and (e). On the record before the Court and in light of the Court's conclusion that Essex had no duty to indemnify The Industry, there is no evidence that Essex violated the provisions of Maine's unfair claims settlement practices statute.[7] Accordingly, the Court will grant judgment in Essex's favor on Count IV.

## D.  Consequences of Breach of Duty to Defend

■ As discussed above, normal contract damage principles apply to a breach of the duty to defend. As the assignee of The Industry, Mr. Bucci may recover the amount, if any, of contract damages suffered by The Industry as a result of Essex's breach of its duty to defend The Industry. The record establishes that The Industry has paid $7,000 of the $200,000 stipulated judgment to Mr. Bucci, and the record also shows that The Industry has

---

6. Mr. Bucci argues that Essex has failed to prove that a civil battery occurred because battery is an intentional tort and Essex has offered no evidence of the assailant's intent. *See* RESTATEMENT (SECOND) OF TORTS § 13. However, the facts of this case—that Mr. Bucci was hit from behind and then punched or kicked in the face until he sustained severe facial damage—establish to the Court's satisfaction that Mr. Bucci was the victim of a battery. In the insurance context, the Law Court has inferred intentional conduct from

evidence of physical violence. *See, e.g., Mutual Fire Ins. Co. v. Hancock*, 634 A.2d 1312, 1313 (Me.1993). Although there is no direct evidence as to the assailant's intent, on the record before it, this Court will infer intent from the repeated and violent contact that resulted in Mr. Bucci's facial injuries.

7. Mr. Bucci offered no post-trial argumentation with respect to Count IV.

no outstanding exposure to recovery for the remaining $193,000 of the stipulated judgment. Mr. Bucci argues that the entire stipulated judgment constitutes damages flowing from the breach of Essex's duty to defend regardless of whether a judgment ultimately would have been within the policy's coverage, while Essex urges the Court to conclude that The Industry's damages from the breach, if any, are limited to the $7,000 that The Industry has paid to Mr. Bucci.

The *Polaroid* approach adopted by the Law Court in *Elliott* recognizes that "no estoppel is involved in any traditional sense because, in refusing to defend a claim, an insurer makes no misrepresentation on which the insured relies to its detriment." *Polaroid*, 610 N.E.2d at 922. Where, as here, the record establishes that the insured is not entitled to coverage under the policy, the question before the Court is "whether, in some way, the amounts paid in settlement arose naturally from the breach so as to be recoverable as contract damages." *Id.* at 921. While an insurer is not automatically liable for an insured's losses in an underlying suit if it improperly refuses to provide a defense, it is possible that the contractual damages of the breach could encompass such costs. As the *Polaroid* court noted:

> Because an insurer should be liable for the natural consequences of a breach of contract that places its insured in a worse position, an obligation to pay settlement costs could result from a breach of the duty to defend. For example, if

an insured lacks financial resources sufficient to maintain a proper defense, an insured's losses in the underlying claim could well be the result of a breach of the duty to defend.

*Polaroid*, 610 N.E.2d at 922. In this context, where The Industry has no further liability for the remainder of the stipulated judgment and Essex has no duty to indemnify The Industry for the stipulated judgment, the Court concludes that the full amount of the stipulated judgment is not a natural consequence of Essex's breach.

However, Mr. Hanson testified that The Industry could not afford to offer a defense to Mr. Bucci's suit and that he settled the case to avoid further fees. He also testified that he did not believe that The Industry had any liability for Mr. Bucci's injuries. Essex offered no evidence to contradict Mr. Hanson's testimony on any of these points. Accordingly, in the Court's view, Mr. Hanson's decision to settle Mr. Bucci's claim through the stipulated judgment and the payment of $7,000 arose naturally from Essex's failure to defend The Industry against Mr. Bucci's underlying tort action. Therefore, the Court will award Mr. Bucci (as assignee of The Industry) damages for Essex's breach of its duty to defend The Industry in the amount of $7,000.[8]

■ Mr. Bucci, as assignee of The Industry's rights both under the Essex policy and against Essex for the breach of the duty to defend, also requests his attorney fees in pursuing the present action.[9]

---

8. The Court recognizes that Mr. Bucci is obligated to return this amount to The Industry under the terms of the assignment agreement.

9. Although Mr. Bucci also seeks to recover *The Industry's* attorney fees in the underlying tort action as well, there is no evidence of any such damages on the record. Mr. Bucci sought to introduce evidence of The Industry's attorney fees on the day of trial, but

Essex moved to strike this evidence because it was not provided to Essex in a timely manner prior to trial, and the Court granted Essex's motion due to the discovery violation. Hence, Mr. Bucci's claim for The Industry's attorney fees incurred in the underlying action fails for lack of proof.

Again, Mr. Bucci stands in the shoes of The Industry—attorney fees are available to Mr. Bucci only if they would be available to The Industry. The Law Court has stated:

> When it is an insurer's clear duty to defend and the insurer wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract that renders it liable to pay such damages as will place the insured in a position equally good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning. The obligation on the insurer of fair dealing with its insured and the burden on the insured in the event of an insurer's failure to defend justify an award of attorney fees to an insured who successfully pursues an action for breach of contract when the duty to defend is clear, pursuant to prevailing Maine law, from the policy and the pleadings of the suit filed against the insured.

*Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1354–55 (Me.1996). This right to attorney fees as currently defined by Maine law is not absolute, and

> attorney fees are available to the insured only when the insurer resists a duty to defend that is clear from the policy and the pleadings filed against the insured.... In determining whether a duty to defend is clear, the insurer will be held to recognize Maine law prevailing at the time of the insured's request for a defense.

*Id.* at 1355. Although Essex was ultimately correct in its initial assessment of the

nature of Mr. Bucci's claim for indemnification under the policy, this correct assessment does not override Maine's pleading comparison test for determining the existence of a duty to defend. The Court concludes that the comparison of the complaint's allegations of The Industry's negligent conduct *after* the conclusion of the attack with the language of the Essex policy, including the assault and/or battery exclusion, gave rise to a clear duty to defend under prevailing Maine law at the time that The Industry requested a defense.

The Court is satisfied that the scope of Maine law, as articulated in *Gibson* and *Union Mutual Fire Insurance Company v. Inhabitants of the Town of Topsham*, 441 A.2d 1012 (Me.1982), is broad enough to permit the inclusion of a third-party victim's attorney fees within the insurer's obligation to pay the insured's attorney fees necessary to enforce the insured's rights under its policy where the third party has incurred fees to enforce the insured's rights while standing in the position of the insured under an assignment of rights.[10] Accordingly, the Court will award Mr. Bucci, as The Industry's assignee, his reasonable attorney fees incurred in the present action with respect to Essex's breach of its duty to defend (Count II).

### III. Conclusion

It is hereby **ORDERED** that

(1) Essex's Motion for Reconsideration be, and it is hereby, **GRANTED**;

(2) The Court's prior decision on Plaintiff's Motion for Partial Summary Judgment be, and it is hereby, **AFFIRMED**;

---

10. The assignment specifically provides: "The assignment of rights, claims and causes of action shall include, but is not limited to, any claims for attorneys' fees, costs, interest or punitive damages that [Mr. Bucci] or [The Industry] may recover from Essex Insurance Company." Pl.Ex. 4, ¶ 2.

(3) Essex's Motion for Judgment as a Matter of Law as to Counts I, III, IV, and V be, and it is hereby, **GRANTED**;

(4) Judgment in favor of Essex be **ENTERED** as to Counts I, III, IV, and V;

(5) Damages of Seven Thousand Dollars ($7,000) be **AWARDED** to Mr. Buccion Count II; and

(6) Mr. Bucci be **AWARDED** reasonable attorney fees attributable to his claim for breach of the duty to defend on the basis of Essex's failure to defend The Industry in the underlying tort action (Count II).[11]

---

11. In the event counsel for the parties are unable to agree on the amount of an award of reasonable attorney fees, Mr. Bucci's right to a court determination thereof will be governed by the provisions of Local Rule 54.2.